*Angel Enterprises Limited Partnership, et al. v. Talbot County, Maryland, et al.*, No. 45, September Term, 2020, Opinion by J. Booth

**IMPOSITION OF CIVIL PENALTIES – ORIGINAL JURISDICTION OVER ADJUDICATION OF PENALTIES IN THE MARYLAND COURTS – JURISDICTION OF BOARD OF APPEALS ESTABLISHED BY CHARTER COUNTY.** Talbot County had no authority to confer subject matter jurisdiction upon its Board of Appeals to consider an administrative appeal of civil penalties assessed by the Talbot County Chief Code Compliance Officer. The Maryland General Assembly has not vested boards of appeal established by charter counties with authority to review or consider civil penalties assessed by a code enforcement officer for violations of a county code. Under the applicable Maryland laws, the authority to adjudicate civil penalties arising from violations of a local code enacted by a charter county is within the original jurisdiction of the courts. Because this case originated in the Talbot County Board of Appeals, which did not have jurisdiction over the matter that was the subject of the administrative appeal, the Court of Appeals vacated the judgment and remanded the case to the Board of Appeals with instructions that its decision be vacated and that the assessments be dismissed.

Circuit Court for Talbot County
Case No.: C-20-CV-18-000011
Argued: April 13, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 45

September Term, 2020

ANGEL ENTERPRISES LIMITED
PARTNERSHIP, et al.

v.

TALBOT COUNTY, MARYLAND, et al.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Booth, J.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Filed: July 9, 2021

In this case, Petitioners, Angel Enterprises Limited Partnership ("Angel") and Morton Bender ("Bender") (sometimes referred to collectively as "Petitioners") have posed several questions to this Court concerning Talbot County's authority to impose civil penalties totaling $713,400 for Petitioners' violations of the Talbot County Code (sometimes referred to as the "County Code," "Code," or "TCC") arising from their unlawful actions associated with clearing trees and constructing a driveway on their property without a permit. The penalties were imposed by six assessment notices issued after the Talbot County Chief Code Compliance Officer ("CCCO") was advised of the violations and issued abatement orders that required the property owners to correct the violations and restore the property to its pre-construction condition.

Under the applicable provisions of the Talbot County Code, the CCCO had the authority to issue "assessment notices" imposing civil fines that would accrue on a daily basis until the code violations were corrected. Under the County Code, a property owner's method for challenging the assessment of civil penalties was to file an administrative appeal to the Talbot County Board of Appeals (sometimes referred to as the "Board of Appeals" or "Board"). Bender and Angel filed an administrative appeal of the assessments on December 29, 2009. After the administrative appeal was stayed by agreement, in 2017, the Board of Appeals conducted an evidentiary hearing on the civil penalties that were assessed by the CCCO's notices over the course of five evidentiary hearings, spanning a total of five months. During the Board of Appeals hearing, Bender and Angel's counsel made several legal arguments challenging Talbot County's process for the imposition of civil penalties—a process that was added to the County Code in 2007. At the conclusion

of the evidentiary hearing, the Board of Appeals determined that the CCCO had the authority to issue the civil assessments under the Code and Bender and Angel's due process rights were not violated by the County's procedure for the adjudication of civil fines. However, the Board determined that, under the applicable provisions of the Code, the daily accrual of fines was stayed by Bender and Angel's administrative appeal filed on December 29, 2009.

After Talbot County filed a petition for judicial review of the Board's decision that the daily accrual of fines was stayed during the pendency of the administrative appeal, the circuit court reversed that portion of the Board's determination and entered an order authorizing Talbot County to enforce the civil assessments "in the amount of $713,400 as originally assessed."

Bender and Angel filed an appeal to the Court of Special Appeals. The intermediate appellate court agreed with the circuit court that, under the plain language of the Talbot County Code, the Board erred in concluding that the penalties were stayed upon the filing of the administrative appeal. The Court of Special Appeals further determined that, because this case was an administrative appeal and the Board did not "mak[e] a factual finding that [Bender and Angel] owed $713,400[,]" the circuit court erred in making such a factual finding. Accordingly, the Court of Special Appeals vacated the portion of the judgment providing that Bender and Angel owed $713,400, concluding that the amount owed "is a determination to be made in a separate proceeding." The Court of Special Appeals also remanded the case to the Board of Appeals for the Board to consider

2

additional issues pertaining to the County's authority to assess penalties for daily violations of the particular code in question.

For the reasons set forth herein, we also vacate the judgment entered by the circuit court. However, our basis for doing so differs from the reasons expressed by the Court of Special Appeals. We conclude that the Talbot County Board of Appeals lacked subject matter jurisdiction to consider or review the CCCO's purported assessment of civil penalties. As explained herein, the adjudication of civil penalties by a charter county in circumstances such as those presented here is within the original jurisdiction of the Maryland courts, and not within the jurisdiction of a local board of appeals established by a charter county under the authority granted by the Express Powers Act. Accordingly, we vacate the judgment and remand this matter with instructions that the Board's decision be vacated, and the assessments be dismissed.

## I.

### Background and Procedural History

Angel[1] purchased an unimproved lot in Talbot County on September 10, 2002. The unimproved property contained a deed restriction denying the landowner direct access to Maryland Route 33 ("Route 33") (also commonly referred to as "the St. Michaels Road") unless approved by the Maryland State Highway Administration, the Talbot County Department of Planning and Zoning, and the Talbot County Public Works Department. Bender intended to construct a residence on the property and obtained a building permit

---

[1] Angel is the owner of the property. Morton Bender is Angel's general partner.

3

from Talbot County for the construction of the residence in 2003. In connection with the construction of the residence, Bender tried, without success, to obtain approval from Talbot County to build a driveway on the property with direct access to Route 33. Bender met with county representatives in February 2005 and was explicitly told that Angel could not have direct access from this property to Route 33 due to safety and environmental concerns.

Despite the County's lack of approval for the driveway, Bender hired a contractor to clear trees and build a driveway in early 2006. The project was ongoing when the County was alerted to the violation by the Maryland Department of the Environment ("MDE"). Upon learning of the unlawful clearing and driveway construction activities, Talbot County issued administrative abatement orders for violations of the Talbot County Code, which kicked off twelve years of enforcement proceedings against Bender and Angel, including: civil and criminal enforcement actions by MDE, county administrative hearings related to the abatement orders, county attempts to assess daily accruing penalties associated with the initial clearing and construction activity, and Bender and Angel's efforts to restore the property. We recount the history as follows.

### A. *Procedural History Related to County Abatement Orders*

#### 1. *Issuance of Abatement Orders*

After learning of the clearing activities and construction of the driveway from MDE, the Talbot County CCCO, Robert Graham, mailed Angel an administrative abatement order on January 23, 2009. This order was followed by a supplemental abatement order, which was mailed to Angel and Bender on February 19, 2009 (the January and February 2009 abatement orders will be collectively referred to as "the abatement orders"). The

4

abatement orders alleged two types of violations: one for cutting trees outside the Critical Area, and the other for cutting trees in the Critical Area. The abatement orders directed the Petitioners to remediate and restore the property. The remediation and restoration requirements established in the abatement orders included, among other things, the removal of the driveway (which required the submission of associated plans for driveway removal), and the restoration of the property to its pre-existing natural habitat (which required a soil erosion and sediment control plan, a stormwater management plan, a non-tidal wetlands management plan, a habitat protection plan, and a forest replacement plan with a 3 to 1 ratio for replanting of trees removed).

The abatement orders stated that the Petitioners' failure to comply with the terms of the orders would subject the property owners to "civil penalties under the Talbot County Code Section 58-5 of up to $1,000 per calendar day for each violation." The abatement orders stated that "civil penalties for continuing violations may be assessed separately for each violation for each day each violation continues." Additionally, according to the abatement orders, "[f]or continuing violations for which civil penalties have been assessed, the civil penalty continues to accrue until the County receives written notice the property has been brought into compliance and the County verifies compliance by inspection or otherwise." The abatement orders also stated that they were subject to appeal to the Board of Appeals.

### 2. *Administrative Appeal of Abatement Orders*

Petitioners appealed the abatement orders to the Board of Appeals on multiple grounds. After a hearing, the Board issued a decision affirming the abatement orders on

5

November 4, 2009. In accordance with the applicable provisions of the Talbot County Code and State law, Petitioners filed a petition for judicial review to the circuit court on December 2, 2009.

Shortly after Angel and Bender filed the petition for judicial review of the Board of Appeals' decision, on December 23, 2009, MDE filed a complaint for injunctive relief and civil penalties against Angel and Bender in the Circuit Court for Talbot County ("MDE civil enforcement action"). The circuit court consolidated the administrative appeal and the MDE civil enforcement action. On June 13, 2012, the circuit court issued a memorandum opinion and order in the administrative appeal denying Angel and Bender's petition for judicial review. Bender and Angel filed a timely appeal to the Court of Special Appeals.

In April 2013, MDE, Angel, and Bender entered into a consent decree, which required Angel and Bender to remove the partially constructed driveway, restore the property to its pre-construction condition, and to pay civil fines totaling $40,000.[2]

With the entry of the consent decree between MDE, Bender, and Angel in the separate, but consolidated case, the Court of Special Appeals dismissed Bender and Angel's appeal of the administrative action as being moot. *Angel Enters. Ltd. P'ship v. Md. Dep't of the Env't*, No. 1155, slip op. at 5 (Md. Ct. Spec. App. Oct. 8, 2013).

---

[2] In addition to the civil enforcement action, MDE also brought a criminal case against Bender and Angel, which was resolved by plea agreement. Angel pleaded guilty to two counts of unlawfully conducting a regulated activity in a non-tidal wetland without first obtaining a permit. The State entered a *nolle prosequi* on the criminal charges against Bender.

Specifically, the intermediate appellate court determined that because Bender and Angel had agreed to the "essential aspects" of the abatement order in the MDE consent decree—namely, removing the driveway and restoring the property to its preconstruction condition—the administrative appeal was moot. *Id.* Bender and Angel argued that the appeal was not moot because the County had assessed its own civil penalties based upon the abatement orders. *Id.* at 6. The intermediate appellate court rejected this argument, noting that the "validity of the penalties . . . are not before this Court on this appeal[.]" *Id.* Bender and Angel filed a petition for writ of *certiorari* to this Court, which was denied in January 2014, bringing the administrative appeal of the county abatement orders to its conclusion.

### B. County's Assessment of Civil Penalties

On December 2, 2009—the same day Petitioners filed the petition for judicial review of the Board's decision upholding the abatement orders—the CCCO issued six notices to Bender and Angel titled "ASSESSMENT OF CIVIL PENALTY – NOTICE OF RIGHT OF REVIEW AND RIGHT TO APPEAL" (referred to collectively as "assessments"). Each assessment contained an individual violation notice and advised Petitioners that "a civil penalty has been assessed against you for the following violation(s) of the Talbot County Code." Each assessment alleged a violation arising from the clearing and construction of the illegal driveway that occurred in 2006. The illegal actions set forth in the assessments can be categorized as either arising from (1) the 2006 clearing and driveway construction activities that formed the basis of the abatement orders; or (2) the "ongoing failure to correct, discontinue, or abate ongoing . . . violation[s] as required by

7

[the] administrative abatement orders [that were upheld] by decision of [the] Talbot County Board of Appeals [in its decision] dated November 4, 2009."

The assessments advised that the daily fine would begin to accrue on December 8, 2009 and would continue to accrue each day. The collective daily fines for the continuing violations were $1,500 per day. The assessments stated that the daily violations would continue to accrue until such time as the County received notice that the violations had been "brought into compliance" and the County verified compliance by an inspection. The assessments also provided the following right to appeal to the Board of Appeals:

> NOTICE OF RIGHT TO APPEAL TO BOARD OF APPEALS
>
> ANY PERSON AGGRIEVED BY THIS ASSESSMENT OF CIVIL PENALTY MAY FILE AN APPEAL TO THE TALBOT COUNTY BOARD OF APPEALS. AN APPEAL IS TAKEN BY FILING WITH THE BOARD A WRITTEN NOTICE OF APPEAL IN ACCORDANCE WITH CHAPTER 20, TALBOT COUNTY CODE, AND IN ACCORDANCE WITH THE BOARD OF APPEALS RULES OF PROCEDURE, ACCOMPANIED BY THE APPROPRIATE FILING FEE. AN APPEAL MUST BE FILED WITHIN 30 DAYS AFTER THE DATE THE CIVIL PENALTY WAS IMPOSED.

On December 9, 2009, Petitioners filed a request for administrative review of the six assessments with the CCCO.[3] Thereafter, on December 29, 2009, Petitioners filed six separate administrative appeals to the Board, challenging the assessments. On April 12, 2010, the Board issued a consent scheduling order consolidating the six appeals and

---

[3] At the time that assessments were filed, the Talbot County Code provided for an initial right to a hearing before the CCCO. Prior to issuing a decision on the request for administrative review, however, the Talbot County Code was amended, and the provisions of the Code providing for initial review before the CCCO were no longer applicable to Petitioners' appeal.

8

deferring the hearing in the penalty appeal until after the completion of the administrative review by the CCCO, and until the circuit court ruled on a motion to stay that had been filed in the pending administrative appeal on the abatement orders.

On May 27, 2010, the circuit court held a hearing on Bender and Angel's motion to stay the administrative appeal of the abatement orders. At that hearing, the County consented to a stay of the continued tolling of penalties while the administrative appeal of the abatement orders was pending in the circuit court. The assessment "appeal" that Petitioners filed with the Talbot County Board of Appeals remained inactive over the ensuing years until August 2016. We briefly pause our discussion of the assessments and turn to Angel and Bender's remediation efforts and restoration of the property.

## C.     *Restoration of the Property*

As noted above, the circuit court denied the Petitioners' petition for judicial review of the abatement orders on June 13, 2012. While the appeal was pending before the Court of Special Appeals, and prior to the entry of the MDE consent order, the Petitioners apparently read the writing on the wall and began their efforts to comply with the abatement orders and remediate the property. In September 2012, the Petitioners' engineers, Lane Engineering, Inc., met with regulators on site to begin work on a restoration plan to bring the property into compliance with the abatement orders. On January 3, 2013, Lane Engineering submitted a restoration plan to the County for its review. Nine months later— on October 10, 2013—the County approved the restoration plan. Once the remediation plan was approved, Angel and Bender commenced remediation. The County approved the restored site on August 31, 2015.

9

By 2016, the Petitioners had completed construction of the residence. Anticipating that the Petitioners would be seeking an occupancy permit from the County, the County filed a civil complaint in the Circuit Court for Talbot County titled "Complaint for Attachment Before Judgment, Interim and Permanent Charging Order, Preliminary and Permanent Injunctive Relief, and Entry of Money Judgment." The complaint recited the enforcement history related to the clearing and driveway construction activities, and asserted that "[a]s a direct and proximate result of their willful, knowing, and fraudulent activities, and their multiple violations of the County's laws protecting [the] environment and natural resources and the resulting environmental destruction, Bender and [Angel] owe substantial civil penalties to the County." The complaint alleged that Bender's administrative appeal of the abatement orders ended in February 2014 with the Court of Appeals' denial of the petition for writ of *certiorari*, that Bender and Angel "elected . . . to procrastinate, delay and to refuse to remove the illegal driveway and correct the environmental destruction on the [p]roperty," and that the abatement orders had not been satisfied until August 31, 2015, more than one and one-half years after the final judgment in the administrative appeal.

The County attached to its complaint a chart titled "Outstanding and Unpaid Civil Penalties Assessed Against [Angel and Bender]" summarizing assessments that related back to the issuance of the initial assessments on December 8, 2009. Although all of the assessments had a "start date" of December 8, 2009, three of the assessments had an end date of October 10, 2013 (totaling 170 days for which the applicable daily fine was

10

accruing), and three of the assessments had an end date of August 31, 2015 (totaling 743 days for which the daily applicable fine was accruing).[4]  The chart reflected that the "total amount claimed by [the County]" in fines was $713,400.  The complaint requested, among other things, that the court: (1) issue an attachment before judgment on the property for the amount of the fines sought; (2) issue a preliminary and permanent injunction enjoining the Petitioners from selling the property, or encumbering the property "until all outstanding civil penalties owed to the County have been reduced to final judgment and fully paid;" and (3) enter a money judgment in favor of the County against Bender and Angel "for all civil penalties found to be due at the conclusion of the pending administrative proceedings when all judicial proceedings have been exhausted or otherwise terminated[.]"

On October 18, 2016, the circuit court entered an order in response to the parties' consent motion, in which the County agreed to issue the Petitioners' certificate of occupancy for their residence in consideration of the Petitioners' agreement to deposit the sum of $713,400 with the clerk of the circuit court "to be held as security to pay to Talbot County for civil penalties found to be due at the conclusion of the pending administrative proceedings, after all ensuing judicial reviews and appeals have been exhausted or otherwise terminated[.]"  The court further ordered the case "stayed until the conclusion of the pending administrative proceedings and all ensuing judicial review and appeals have been exhausted or otherwise terminated[.]"

---

[4] The end date for three of the assessments—October 10, 2013—coincides with the date that the County gave its final approval of the Petitioners' restoration plan.  The end date for the other three assessments—August 31, 2015—coincides with the date that the County gave its final approval of the restoration of the property.

11

*E.*     *The Administrative Appeal of the Civil Penalties*

With their occupancy permit in hand, having deposited $713,400 in funds with the circuit court, in November 2016, Petitioners resubmitted the consolidated appeal of the assessments to the Board of Appeals. On April 24, 2017, the Board held its first hearing on the civil penalties appeal. It held five additional evidentiary hearings between May 2017 and September 2017. At the first hearing, Petitioners' counsel asserted, by motion, several legal arguments in support of Petitioners' position that the County could not collect the assessments in the manner proposed by the County. Specifically, Petitioners' counsel argued that under TCC §§ 58-12 A.(3) and 20-6 B.(3),[5] the Petitioners' filing of the petition

---

[5] Petitioners contend that the following provisions of the Talbot County Code operated to stay the accrual of daily fines during the pendency of its administrative appeal of the abatement orders.

First, TCC § 1-14 supplies the following definition of enforcement action:

ENFORCEMENT ACTION – Any suit, action, demand, *monetary penalty, abatement order, or other administrative*, civil, or criminal proceeding established by the Code and all decisions, judgements, degrees, convictions or *penalties issued by any administrative agency or court to enforce* the same.

(Emphasis added). With respect to proceedings pending before the Talbot County Board of Appeals, TCC § 20-6 B.(3) provides as follows:

An application for administrative appeal *shall automatically stay all further proceedings to enforce compliance with the order*, requirement, decision, or determination, and shall automatically stay all further subdivision, site plan, and related development reviews. There shall be no automatic stay when, in the judgment of the official having administrative authority to decide the question, a stay would cause immediate peril to life or property.

(Emphasis added). Finally, TCC § 58-12 A.(3) provides as follows:

12

for judicial review of the abatement orders operated as a stay of any enforcement action to enforce the abatement orders against the Petitioners. Petitioners' counsel asserted that the assessments were imposed to force Petitioners' compliance with the abatement orders, which the Code did not permit so long as the abatement orders were being challenged on appeal. Counsel also argued that Petitioners were entitled to a full evidentiary hearing prior to the imposition of the assessments. Petitioners' counsel suggested that the County had "split[] its cause of action" by separating the assessments or penalties arising from the abatement orders from the abatement orders themselves.

The County Attorney argued that, once the Board of Appeals made its decision upholding the abatement orders on December 2, 2009, the County was free to issue penalties and "assessed them" on the same date. He explained that the penalties began "accruing" on a daily basis as of December 8, 2009 in an attempt to encourage the Petitioners to begin restoration. The County Attorney introduced into evidence a copy of the former county code and explained that the "Board no longer had the same powers." He explained that the procedure for administrative appeals had been changed, and that, as a result of these changes, the burden of proof shifted and "now require[s] that the [a]pplicant carries the burden of proof." In response to questioning from the Board concerning

An appeal stays all actions by the Chief Code Compliance Officer seeking enforcement or compliance with the order or decision being appealed, unless the Chief Code Compliance Officer certifies to the Board of Appeals that (because of facts stated in the certificate), in his/her opinion, such stay will cause imminent peril to life or property. In such a case, action by the Chief Code Compliance Officer shall not be stayed except by order of the Board of Appeals or a court upon application of the party seeking the stay.

13

whether the delay in assessing civil penalties "could amount to a denial of substantive due process – being arbitrary and capricious," the County Attorney responded that "case law indicated the county had considerable discretion in determining whether to assess any penalty[]" and that he did not believe that the penalties assessed in this case were excessive.

After hearing the initial legal arguments presented by the Petitioners' counsel and the County Attorney, the Board members discussed whether the County had the authority to issue daily assessments during the pendency of the appeal. Several Board members expressed doubt and concern over the County Attorney's position. The Board Chairman, Paul Shortall, questioned whether the Board had jurisdiction to consider the matters raised in the appeal. Another member of the Board, Phillip Jones, commented that, although the monetary penalty was coercive and intended to induce compliance, "it is always a citizen's right to take appeals[.]" He expressed concern that a citizen's right to appeal could be chilled if daily penalties continued to accrue during the pendency of the appeal. He also added that the recent legislative changes to the Board's rules of procedures and Code provisions "stack the deck" in favor of the County, adding that the County's filing fees to file an administrative appeal to the Board of Appeals are burdensome for most citizens.[6]

After obtaining legal advice in a closed session, the Board reconvened and proceeded to conduct the evidentiary hearing. The Board deferred its ruling on whether

---

[6] The County's filing fee for a Board of Appeals hearing is $750. Initially, the County charged Petitioners a filing fee of $4,500, representing a separate filing fee for each of the six assessments. The County ultimately agreed to consolidate the appeals and charged a single filing fee of $750.

the assessments were stayed during the pendency of the appeal of the abatement orders until after it received the evidence.

The Board considered the testimony of several witnesses at the evidentiary hearing. Robert Graham, the CCCO, testified that he had been the enforcement officer for 14 years. He testified that, upon receiving a complaint, his typical practice is to visit the site, assess the site for code violations, and write up abatement orders for any code violations. Mr. Graham explained that, if the property owner does not correct the violations as required by the abatement orders, he has the authority to issue a monetary penalty to "incentivize the property owner to correct the violation."

Mr. Graham acknowledged that the assessments that he issued to the Petitioners arose from the tree cutting and driveway violations that were the subject of the abatement orders. He admitted that his authority under the Code to issue assessments for civil fines is discretionary—that he typically gives the property owner 30 days to correct the violation identified in the abatement orders prior to issuing assessments, and that he has the discretion to make the abatement period longer. He admitted that in this instance, it would have been impossible for the Petitioners to complete the work required under the abatement orders in 30 days.

Sean Callahan, a principal with Lane Engineering, Inc., testified concerning the engineering firm's efforts to resolve the violations on Bender and Angel's behalf. Lane Engineering prepared the restoration plans, which were admitted into evidence. Mr. Callahan described the process for preparing the plans, the work involved, and the County's timeline for approval of the plans, as well as the timeline for implementing the remediation

15

plan. He testified that he met onsite with regulatory authorities in September 2012. He explained that the preparation of the initial plan took about six weeks and included a forest conservation plan, critical area mitigation plan, soil erosion and sediment control plan, and stormwater management plan. Field work was also involved, including surveying and wetlands delineation.

Mr. Callahan described the County's approval process, which involves initial submission of the plans, technical review by County staff, comments and requests for revisions, the engineering firm's incorporation of comments and revisions to the plans, and resubmission. He testified that the soil erosion and sediment control plan was submitted in October 2012, less than one month after the on-site meeting. He testified that the County's review process took eight months. Mr. Lane also noted that the County selects the dates for replanting, which usually occur in the spring or fall. He explained that when the initial plans were submitted, it would have been possible to complete the plantings in the spring and fall growing seasons for the next calendar year, but because the plans were not immediately approved by the County, the plantings were not able to be completed in those seasons. The Board also heard testimony from Mr. Bridges, with Bridges Land Management, who performed some of the restoration work. Mr. Bridges described the work that his company performed on-site as part of the restoration work. Elisa DeFlaux, the Talbot County Environmental Planner, testified that, she was aware that under the language in the assessments, Petitioners were given six days to complete the restoration work before the fines commenced. She agreed that it would have been impossible to obtain approval of the restoration plan and completion of the work within that time period. She

16

also acknowledged that a ten-month process for county review and approval of plans of this nature was normal. She agreed that the County establishes the planting completion dates, which in this case, would have involved the fall and spring growing seasons. She explained that the restoration is not complete until the plantings are installed and approved.

On December 15, 2017, the Board issued its findings of fact and conclusions of law. The Board concluded that: (1) the County had the authority to issue the civil penalties under the TCC; (2) under applicable provisions of the State Forest Conservation Act, NR § 5-1612(d)(1), the Legislature had delegated to the County the authority to charge a penalty in an amount not to exceed $1,000 per day, with each day constituting a separate violation; and (3) the CCCO did not err in assessing the monetary penalty. However, the Board agreed with Angel and Bender that the civil penalties were stayed during the pendency of Bender and Angel's administrative appeal. The Board concluded that, under the plain language of TCC §§ 58-12 A.(3) and 20-6 B.(3), Petitioners' administrative appeal of the civil penalties, which was filed on December 29, 2009, stayed the accrual of the daily penalties authorized by TCC §§ 58-3. Accordingly, the Board determined that, although the assessments were "valid and enforceable and fell within the statutory limits and that Mr. Graham acted properly" in issuing them, the daily assessments were only permitted from December 8, 2009 (the date under which the penalties commenced under the assessment notices), until Angel's administrative appeal of the assessments, which was filed on December 29, 2009.

17

### F. Circuit Court Review of the Board's Civil Penalties Decision

Neither side was happy with the Board's decision on the civil penalties. On January 16, 2018, the County filed a petition for judicial review of the Board's decision. It argued that the Board erred in finding that the daily penalties were stayed after the appeal was filed on December 29, 2009. Angel and Bender filed a cross-petition, asserting that the Board erred in: (1) finding that the County had the authority to impose penalties for continuing violations; (2) upholding the penalties assessed; and (3) refusing to consider Angel's due process claim.[7]

After the submission of legal memoranda by the parties and a hearing, the circuit court issued a written decision. It affirmed the Board's decision in part and reversed it in part. First, the court determined that the "Board did not err in denying [Angel's] procedural due process challenge[,]" concluding that in a proceeding before a county board of zoning appeals, the applicant bears the burden of proof. Second, the court ruled that the County had the legal authority to impose penalties for continuing violations under TCC § 58-5 D. Third, the court upheld the Board's determination that the penalties assessed by the CCCO were not arbitrary or capricious. Finally, the court determined that the Board erred in concluding that the accrual of the civil penalty assessments was stayed under the applicable provisions of the County Code. The circuit court determined that Angel and Bender were "liable for the full amount of the civil penalties as assessed by Talbot County[,]" that they

---

[7] The Board declined to consider the due process argument, concluding that the argument was barred by collateral estoppel because Bender and Angel had previously raised a due process claim in a separate board proceeding.

18

owe, and the County "may seek to enforce [c]ivil [p]enalty [a]ssessments . . . in the amount of $713,400[.]"

Angel and Bender filed an appeal to the Court of Special Appeals. In an unreported opinion, the Court of Special Appeals affirmed the circuit court judgment in part, and reversed it in part, vacating the circuit court's entry of judgment with respect to the civil penalties totaling $713,400, with instructions that the case be remanded to the Board of Appeals for further proceedings. *Angel Enters. Ltd. P'ship v. Talbot County*, No. 2842, Sept. Term, 2018, 2020 WL 4882450 (Md. Ct. Spec. App. Aug. 20, 2020).

After undertaking a plain language analysis of the pertinent provisions of the Talbot County Code, the court agreed with the circuit court's conclusion that the Board erred in determining that the daily assessment of penalties was stayed. *Id.* at *9. However, the Court of Special Appeals determined that the circuit court erred in imposing penalties in the amount of $713,400 because the Board "did not make a factual finding in this regard[.]" *Id.* The intermediate appellate court stated that,

> although we affirm the circuit court ruling that the continued penalties were not stayed by the December 29, 2009 appeal, we vacate the portion of the judgment providing that [Angel and Bender] owe $713,400. The number of days that the violations continued, and the total amount due, is a determination to be made in a separate proceeding.

*Id.*

The intermediate appellate court rejected Angel and Bender's due process arguments, concluding that Bender and Angel had a "meaningful opportunity to be heard, where they presented their evidence and had the opportunity to rebut the County's evidence." *Id.* at *10. The Court of Special Appeals also rejected Bender and Angel's

19

argument that the County lacked the authority to impose continuing violation penalties. Specifically, the court concluded that the County's code provisions that permitted civil fines for continuing violations were consistent with the State law provisions authorizing local jurisdictions to establish civil fines for violations of a local forest conservation program and critical area program. *Id.* at *13–14.

The Court of Special Appeals observed, however, that there is a legal distinction between the County's legal authority generally under State law to assess a daily civil penalty for a violation of a code provision, and the County's authority in this instance to impose an ongoing daily penalty for the specific six code violations that were the subject of the assessments. Concerning the latter question—whether the County had the authority to impose daily assessments for code violations here—the Court of Special Appeals determined that the answer depended upon the specific violation in question, and the language of the code that governed the particular violation. *Id.* at *14–15. The intermediate appellate court observed that neither the County nor the Board had undertaken this analysis, and that the Board simply "limited its assessment of the issue [to] whether the County had the legal *authority* to impose penalties for continuing violations" under the Express Powers Act, Local Government Article, Title 10. *Id.* at *15 (emphasis added). Because the Board did not undertake that determination, the intermediate appellate court stated that it would "vacate the circuit court's ruling in this regard and remand for further consideration of this issue." *Id.* Finally, the Court of Special Appeals rejected Bender and Angel's argument that the assessments were duplicative or arbitrary and capricious. *Id.* at *16–17. The mandate issued by the Court of Special Appeals remanded the case to the

20

circuit court "with instructions to remand the case to the Board for further proceedings consistent with this opinion." (Capitalization omitted).

Petitioners filed a petition for writ of *certiorari* to consider the following questions:

1. Did the Board violate Petitioners' due process rights by requiring Petitioners to bear the burden of proof (including the burdens of persuasion and going forward with the evidence) to explain the County's basis for its actions and also to disprove the propriety and amount of the County's civil penalties?

2. Did the Board err in imposing penalties on a daily, continuing basis, including for days where no violative conduct occurred, and while Petitioners were exercising their right to challenge the County's allegations and attempt to impose penalties?

3. Did the Board err in finding that Talbot County has the legal authority to impose continuing violation penalties where the Express Powers Act limits the County's ability to impose fines and does not authorize penalties for continuing violations?

4. Did the Board err in determining that the civil penalties imposed by Talbot County were stayed upon the filing of Petitioners' appeal pursuant to Code §§58-12A(3) and 20-6B(3)?

5. Are the civil penalties sought by the County unconstitutionally excessive in violation of Article 25 of the Maryland Declaration of Rights and the Eighth Amendment to the United States Constitution?

The Respondent filed a conditional cross-petition for writ of *certiorari*, requesting this Court answer the following additional questions:

1. Whether the assessment of daily penalties for zoning violations continue[s] for each day between the violation date and date upon which such violation is abated? . . . or instead whether the penalties only accrue on the dates upon which the illegal actions occurred?

2. Whether an appellate court should decide an issue of judicial estoppel that occurred during the judicial review period after an administrative decision (and not remand it to the administrative body for review)?

21

We granted *certiorari* on both the petition and the cross-petition.

During this Court's oral arguments, we asked counsel questions concerning whether the Talbot County Board of Appeals had subject matter jurisdiction under the Express Powers Act, Local Government Article, Title 10, Subtitle 2 to review the CCCO's assessment of civil fines or penalties. Following oral argument, we entered an order inviting the parties to submit supplemental briefing on the following question:

> Whether the Talbot County Board of Appeals has subject matter jurisdiction under The Express Powers Act, Local Governmental Article, ("LG") Title 10-101, *et seq.*, (and in particular, the jurisdictional parameters of charter county boards of appeal established by LG § 10-305(b)), to review or adjudicate assessments of civil penalties or fines by the county code compliance enforcement officer?

In response to our invitation, Petitioners and Respondent each submitted supplemental briefing on this issue. For the reasons set forth below, we conclude that the Talbot County Board of Appeals lacked subject matter jurisdiction to review the CCCO's assessments of civil penalties, and that the assessments are invalid and unenforceable. Because we determine that the Board of Appeals lacked authority to review the assessments, we do not reach the issues presented by the Petitioners and the Respondent in their petition and cross-petition.[8] We shall vacate the judgment of the circuit court and issue a mandate with instructions that the Board of Appeals dismiss the assessments.

_____

[8] Given that we have determined that the Board of Appeals lacked jurisdiction to consider the assessments in the first instance, and our dismissal of the case, we do not reach the merits of the remaining issues upon which *certiorari* was granted. Our opinion should not be considered as either agreeing or disagreeing with the legal determinations by the circuit court and the Court of Special Appeals in its unreported opinion on matters that we have not considered. To the extent that our dismissal of this case leads to further

22

## II.

## Discussion

In their petition for writ of *certiorari*, Petitioners raise several issues related to Talbot County's process for assessing and adjudicating civil fines or penalties for violations of the Talbot County Code, and the County's legal authority to impose civil penalties in the manner outlined in the Code. The Petitioners' questions, and the questions posed by the Respondent in its cross-petition, all relate to the process for assessing civil penalties established by the Talbot County Code for code violations, which starts with an assessment notice issued by the CCCO, and provides an administrative right to appeal to the Talbot County Board of Appeals.

The questions presented here involve questions of law, which we consider *de novo*. *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372 (2010). Although ordinarily we do not consider a matter that has not been raised in a petition for writ of *certiorari*, *see* Maryland Rule 8-131(b), that rule is not absolute. The issue raised by this Court involves whether the Board of Appeals had subject matter jurisdiction to consider an appeal of civil fines imposed by assessment notices. "Lack of subject matter jurisdiction may be raised at any time, including initially on appeal. Additionally, the issue of subject matter jurisdiction need not be raised by a party, but may be raised by a court *sua sponte*." *Cty. Council of Prince George's Cty. v. Dutcher*, 365 Md. 399, 405 n.4 (2001) (citations omitted); *see also Duffy v. Conaway*, 295 Md. 242, 254–55 n.8 (1983) (observing that

proceedings between these parties, they will be free to argue their respective legal positions on the matters that were not considered herein.

23

subject matter "jurisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties[]") (citations omitted).

For the reasons set forth herein, we hold that the Talbot County Board of Appeals lacks subject matter jurisdiction to consider administrative appeals of civil fines. The General Assembly has vested original jurisdiction in the Maryland courts for the adjudication of civil fines that are sought to be imposed by a charter county under the pertinent provisions of State law. Consistent with the applicable provisions of State law that confer original jurisdiction in the Maryland courts to adjudicate civil penalties arising from code violations enacted by a charter county, the General Assembly has *not* granted jurisdiction to a board of appeals established by a charter county to conduct an administrative review of assessments of civil penalties.

As we recently explained in *K. Hovnanian Homes of Maryland, LLC v. Mayor of Havre de Grace*, 472 Md. 267, 292 (2021), when a party is challenging the authority of a local government to take a particular action, it is important to strip away the labels and consider the particular governmental action that is sought to be undertaken. First, we identify the precise nature of the governmental action in question. *Id.* Second, we determine whether the local government "has the *legal authority* to undertake the action, and if so, whether the contemplated action was *correctly undertaken* consistent with that grant of authority." *Id.* (emphasis in original).

### A. *Nature of the Governmental Action—Imposition and Adjudication of Civil Penalties*

In this case, the governmental action at the center of the controversy consists of the CCCO's issuance of six assessment notices purporting to assess civil penalties arising from: (1) the Petitioners' unlawful tree clearing and driveway construction activities in 2006; and (2) the Petitioners' "ongoing failure to correct, discontinue, or abate ongoing" violations as required by the two administrative abatement orders that were the subject of the initial administrative appeal. On their face, the assessment notices are exactly what they are described to be—assessments of civil penalties or monetary fines.

Having identified the nature of the governmental action—we consider whether the County's assessment of civil penalties comports with the authority granted to the County by the Maryland Constitution, State law, and, finally, local laws. Although the code enforcement officer has the authority to seek the imposition of civil penalties for code violations, we determine that the local county administrative procedure for the assessment of civil penalties is inconsistent with the applicable provisions of State law that confer original jurisdiction over the adjudication of civil fines of this nature in the Maryland courts. Moreover, we determine that the County's code provisions that purport to expand the Board of Appeals' jurisdiction to encompass administrative appeals of civil fines are inconsistent with State law.

## B. Statutory Authority for the Imposition of Civil Penalties by a Charter County for County Code Violation

We start our analysis with Article XI-A of the Constitution of Maryland ("the Home Rule Amendment"),[9] and the Express Powers Act of the Maryland Code, Local Government Article § 10-101, *et seq.* Talbot County has elected a charter form of local government, deriving its constitutional source of authority from Article XI-A, Section 2 of the Maryland Constitution, which provides that "[t]he General Assembly shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article." Md. Const. art. XI-A, § 2.

The Home Rule Amendment mandated that the General Assembly enumerate and delegate certain powers, which may be exercised by counties electing a charter form of government. *Ritchmount P'ship v. Bd. of Supervisors of Elections for Anne Arundel Cty.*, 283 Md. 48, 57 (1978). In compliance with its constitutional mandate, the Legislature enacted the Express Powers Act, "which . . . endows charter counties with a wide array of legislative and administrative powers[.]" *Id.*; *see also Miles Point Prop., LLC*, 415 Md. at 384 (explaining that "[t]he Express Powers Act is the General Assembly's fulfillment of this constitutional command[]"); *Anne Arundel County v. Bowen*, 258 Md. 713, 715 (1970) (observing that the Express Powers Act was enacted "[i]n obedience to [Article XI-A's] mandate"); *Cty. Council for Montgomery Cty. v. Inv'rs Funding Corp.*, 270 Md. 403, 418

---

[9] For a history of the Home Rule Amendment, Article XI-A of the Maryland Constitution, *see Ritchmount Partnership v. Board of Supervisors of Elections for Anne Arundel County*, 283 Md. 48 (1978).

(1973) (stating that the purpose of the Act "is to share with the counties, within well delineated limits the legislative powers formerly reserved to the General Assembly[]"). Prior to October 1, 2013, enumerated express powers that were granted to and conferred upon charter counties were codified in Maryland Code, Article 25 A, § 5 (1957, 2011 Repl. Vol). Former Article 25A, § 5 was re-codified without substantive change as part of the code revision and creation of the Local Government Article ("LG") by ch. 119 of 2013 Laws of Maryland.

Under the Express Powers Act, charter counties have the authority to exercise their express powers by legislative enactment. *See* LG § 10-102(a). In addition to the laundry-list of enumerated express powers identified in the Express Powers Act (*see* LG § 10-301, *et seq.*),[10] the Express Powers Act grants a charter county council additional legislative powers to pass ordinances or resolutions that "may aid in maintaining the peace, good government, health, and welfare of the county[,]" but only to the extent that the exercise of such powers is not "inconsistent with State law[.]" LG § 10-206(a); *see also* LG § 10-206(b) ("A county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law.").

---

[10] The specific enumerated powers set forth in the Express Powers Act, LG § 10-102, *et seq.* grant charter counties the authority to adopt local laws on a broad range of topics including: the establishment of a county board of appeals (LG § 10-305); the establishment of election districts and precincts (LG § 10-306); the establishment of a competitive bidding process (LG § 10-310); acquisition of property (LG § 10-312); imposition of taxes (LG § 10-313); waste disposal, soil erosion, and building construction standards (LG § 10-317); fences (LG § 10-318); public parks (LG § 10-323); planning and zoning (LG § 10-324); historic preservation (LG § 10-325); public health nuisances (LG § 10-328); and animals (LG § 10-329).

Where a charter county enacts local laws on any matter authorized by the Express Powers Act, the Act also grants the county the authority to enforce its laws by civil and criminal fines. Specifically, LG § 10-202(b) provides that: "[a] county may provide for the enforcement of an ordinance, a resolution, a bylaw, or a regulation adopted under this title: (1) *by civil fines not exceeding $1,000*; or (2) by criminal fines and penalties not exceeding $1,000 and imprisonment not exceeding 6 months." (Emphasis added).

Where a charter county adopts civil fines or penalties for violations of its ordinances that are adopted pursuant to the Express Powers Act, the Legislature has conferred exclusive, *original* jurisdiction over the adjudication of such matters in the *courts*. Specifically, Courts and Judicial Proceedings Article ("CJ") § 4-401 confers upon the Maryland District Court, "*exclusive original civil jurisdiction* in: . . . [a] proceeding for adjudication of: . . . [a] violation of an ordinance enacted: . . . [b]y a charter county for which a *civil penalty is provided under § 10-202 of the Local Government Article*[.]" (Emphasis added). The District Court's exclusive original jurisdiction over the adjudication of civil penalties is subject to the provisions of CJ § 4-402(d), which grants concurrent jurisdiction in the circuit court, if the amount in controversy exceeds $5,000, exclusive of prejudgment interest or attorney's fees, if allowable.

In addition to the express powers enumerated under the Express Powers Act, elsewhere under State law, the Legislature has granted local governments additional powers. For example, and as particularly pertinent here, the Legislature requires that a local government with planning and zoning authority adopt a forest conservation program, consistent with standards established by State law, which must be approved by the

28

Department of Natural Resources ("Department") ("the Forest Conservation Act"). *See* Maryland Code, Natural Resources Article ("NR") § 5-1603. The enforcement provisions of the Forest Conservation Act, NR § 5-1612, grant enforcement authority to the Department, as well as any local authority that has adopted a forest conservation program. The penalty provisions for violations of the Forest Conservation Act are similar in nature to the civil penalties authorized by the General Assembly under the Express Powers Act for violations of ordinances enacted by charter counties:

> (1) A person who violates any provision of this subtitle [Forest Conservation Act] or any regulation, order, plan, or management agreement under this subtitle is liable for a *penalty not exceeding $1,000 which may be recovered in a civil action* brought by the Department or a local authority. Each day a violation continues is a separate violation under this subtitle.

> (2) *The court* may issue an injunction requiring the person to cease the violation and take corrective action to restore or reforest an area.

NR § 5-1612(d) (emphasis added).[11]

In addition to adopting a local forest conservation program, the Legislature also requires that local governments with planning and zoning powers over any property which is located within the Chesapeake Bay Critical Area adopt a critical area protection program approved by the Critical Area Commission for the Chesapeake and Atlantic Coastal Bays

---

[11] To assist local governments with the development of a local forest conservation program, the Department of Natural Resources has promulgated, by regulation, a Model Forest Conservation Ordinance. *See* Code of Maryland Regulations ("COMAR") 08.19.03.01. The enforcement provisions in the Model Ordinance, which provide for the establishment "of a penalty not to exceed $1,000, which may be recovered in a civil action brought by the Department[,]" are identical to the enforcement provisions for a violation set forth in NR § 5-1612.

("Critical Area Commission"). *See* NR § 8-1801, *et seq.* ("Critical Area Laws"). The Critical Area Law, NR § 8-1815(a), establishes the following enforcement provisions:

(2)(i) *A person who violates a* provision of an order, permit, plan, *local program*, this subtitle, or regulations adopted, approved, or issued under the authority of this subtitle shall be:

1. Subject to prosecution *or suit in circuit court or District Court* by the chairman or local authorities, *who may invoke the sanctions and remedies afforded by State or local law*;

2. Guilty of a misdemeanor; and

3. On conviction in a court of competent jurisdiction, subject to a fine not exceeding $10,000 or imprisonment not exceeding 90 days or both, with costs imposed in the discretion of the court.

(ii) A criminal prosecution *or a suit for a civil penalty for violation of a* provision of an order, permit, plan, *local program*, this subtitle, or regulations adopted, approved, or issued under the authority of this subtitle shall be instituted within 3 years after the Commission or the local authorities in fact knew or reasonably should have known of the violation.

(Emphasis added). In addition to the general enforcement provisions set forth above, the Critical Area Law also establishes additional, supplemental penalties and remedies for damages occasioned by tree cutting or clearing activities in the critical area in violation of an approved local program. *See* NR § 8-1815.1. These laws permit a local jurisdiction, the Critical Area Commission, or the Office of the Attorney General to bring an action in the circuit court to require, among other things, that the violator replant trees or for damages "[t]o be assessed by a circuit court in an amount equal to the estimated cost of replanting trees." NR § 8-1815.1(b).

In summary, the Express Powers Act, LG § 10-202, grants charter counties the authority to impose civil fines for violations of its ordinances enacted pursuant to the

30

exercise of its express powers. The Legislature has conferred original jurisdiction for the adjudication of such penalties and fines in the District Court, *see* CJ § 4-401(10)(vi)(1), with concurrent jurisdiction in the circuit courts where the amount exceeds $5,000, *see* CJ § 4-402(d). In addition to powers granted under the Express Powers Act, and as pertinent here, where the Legislature has required the adoption of a local conservation program and a critical area program, the Legislature has created similar enforcement provisions, authorizing the assessment of civil penalties which are brought "as a civil action" (in the case of a forest conservation violation) or as "suit in circuit court or District Court" (in the case of a critical area violation, in addition to potential criminal prosecution). Under the applicable provisions of State law that authorize a charter county to impose civil fines for violations of its ordinances and local laws, including laws related to violations of a local forest conservation program and critical area program, such laws provide for the adjudication of civil fines and penalties within the original jurisdiction of the Maryland courts.

C.      *Enforcement Provisions for Violations of Talbot County Code—Talbot County's Establishment of an Administrative Process for the Imposition and Adjudication of Civil Penalties*

In accordance with the authority granted under the Home Rule Amendment, the Express Powers Act, and other provisions of State law which grant the authority to enact local laws, Talbot County has adopted a Charter and a County Code. The Talbot County Code represents a compilation of its ordinances and public local laws, consisting of Chapters 1 through 190. TCC § 1-1. In 2007, the Talbot County Council enacted Bill No. 1108, which adopted a new Chapter 58 to the Talbot County Code, which purported to

31

create unified code enforcement procedures applicable to the Talbot County Code, including provisions for the accrual of daily civil penalties for continuing code violations, and a county administrative process for the imposition of civil fines and penalties by the code compliance officer, with the right to appeal to the Talbot County Board of Appeals.[12]

Chapter 58, titled "Enforcement of Code," establishes the enforcement provisions available to the County, as well as the penalties for violations of the County Code.[13] TCC § 58-3 provides that each violation of the Code that occurs and "each calendar day that a violation continues shall be a separate offense. Any person who violates any provision of

---

[12] The full title of Bill No. 1108 from the 2007 Legislative Session of the Talbot County Council is:

A BILL TO CREATE UNIFIED CODE ENFORCEMENT PROCEDURES APPLICABLE TO THE TALBOT COUNTY CODE, WITH CERTAIN CHAPTERS EXCEPTED, INCLUDING PENALTIES FOR DAILY AND CONTINUING VIOLATIONS, TO DESCRIBE PERSONS RESPONSIBLE FOR VIOLATIONS, TO PROVIDE FOR CIVIL PENALTIES, CIVIL INFRACTIONS, ADMINISTRATIVE ABATEMENT ORDERS, INJUNCTIVE RELIEF, AND NON-ISSUANCE, NON-RENEWAL, SUSPENSION OR REVOCATION OF PERMITS, TO MAKE ALL REMEDIES CUMULATIVE, TO PROVIDE FOR RECOUPMENT OF ENFORCEMENT COSTS, TO PROVIDE FOR APPEALS TO THE TALBOT COUNTY BOARD OF APPEALS, AND TO AMEND CHAPTER 10, ENTITLED "ALARMS" § 10-6 "INSPECTIONS AND ENFORCEMENT, VIOLATIONS AND PENALTIES" OF THE TALBOT COUNTY CODE, TO GRANT THE CHIEF CODE COMPLIANCE OFFICER AUTHORITY TO ENFORCE SAID CHAPTER, AND GENERALLY RELATING TO ENFORCEMENT PROCEDURES UNDER THE TALBOT COUNTY CODE

[13] The enforcement provisions set forth in Chapter 58 "apply to every chapter, article, and section of [the] Code except Chapter 8 (Airport); Chapter 11 (Alcoholic Beverages); Chapter 15 (Animals); Chapter 102 (Parks and Recreation); Chapter 121 (Public Landings); and Chapter 159 (Smoking and Tobacco Products)." TCC § 58-1.

this Code shall be subject to separate fines, orders, sanctions, and civil penalties for each offense." The Code provides that "each offense shall be punishable by a civil penalty of up to $1,000 per calendar day[]" unless a different amount is established under the Code. TCC § 58-5 A, C. As the title of the original 2007 bill reflects, instead of providing for the adjudication of civil penalties for code violations by the *courts*, Chapter 58 establishes an *administrative process* for the imposition of civil penalties. As set forth below, the County's administrative process for the imposition of civil penalties is extensive and provides only limited review by the circuit court in the form of a petition for judicial review.

The Code designates a CCCO to enforce the provisions of the Code. TCC § 58-2. The Code states that "[t]he amount of a civil penalty shall be *administratively imposed* by the [CCCO] by written notice." TCC § 58-5 A. (Emphasis added). The CCCO is vested with the authority to determine the amount of the civil penalty, which "shall be determined per calendar day[,]" after considering the following factors: "(1) [t]he severity of the violation for which the penalty is to be assessed; (2) [t]he presence or absence of good faith of the violator; (3) [a]ny history of prior violations." *Id.*

The Code requires that the CCCO send a written "notice of violation and assessment of a civil penalty[,]" which shall include:

(1)    Each alleged violation, including a citation to the section of the Talbot County Code allegedly violated;

(2)    Classification of each alleged violation as a continuing or noncontinuing violation;

33

(3)     Separate assessment of a civil penalty for each violation, and a separate daily assessment for each continuing violation;

(4)     Notice of the right to request administrative review before the Hearing Officer to evaluate the amount(s) of civil penalties; and

(5)     Notice of the right to file an appeal with the Board of Appeals.

TCC § 58-5 B.  The Code provides for the imposition of civil penalties for each calendar day that a violation continues, with no requirement that the County provide additional "assessments, notice, or hearings."  TCC § 58-5 D.  Additionally, through the use of the word "shall," the TCC seems to *require* the imposition of a daily fine by rote computation: "The total amount payable for continuing violations *shall be* the amount assessed per calendar day for each violation multiplied by the number of calendar days that each violation has continued."  *Id*. (Emphasis added).[14]

If the amount of the civil penalties claimed by the County does not exceed $5,000, the alleged violator has the right to a hearing before a hearing officer appointed by the county manager (and subject to the approval of the County Council), who may "decrease, increase, or confirm the amount of the civil penalty."  TCC § 58-2 B.  TCC § 58-2 C provides that the Talbot County "Board of Appeals *shall have exclusive jurisdiction* to

---

[14] The County Attorney confirmed this interpretation by advising the Board that under the TCC, the "civil penalty continues to operate with no further enforcement action required.  There's no further action required by the county, by the County code officer.  It continues to accrue by operation of law."

review civil penalties claimed by the County in excess of $5,000 cumulatively." (Emphasis added).[15]

### D. Talbot County's Code Provisions—That Purport to Establish an Administrative Process for the Imposition of Civil Penalties with a Right to an Administrative Appeal to the Board of Appeals—are Ultra Vires and Inconsistent with State Law

The Talbot County Code provisions that establish a procedure for the administrative imposition and adjudication of civil fines by assessment notices issued by a CCCO, with a right to an administrative appeal to the Talbot County Board of Appeals, are inconsistent with the applicable provisions of State law, which vest original jurisdiction in the courts for the adjudication of civil penalties established by a charter county in the exercise of its express powers, as well as in the exercise of additional powers authorized by the Forest Conservation Act and the Critical Area Law. *See, e.g.*, CJ §§ 4-401(10)(vi)(1), 4-402(d) (establishing exclusive original jurisdiction for the adjudication of penalties for violations arising under a charter county's exercise of express powers in the District Court unless the amount in controversy exceeds $5,000, in which case the trial courts of general jurisdiction

---

[15] We observe that, in addition to the administrative process for the assessment of civil penalties, the County Code also provides for the enforcement for the provisions of its code by municipal infraction. *See* TCC § 58-6 ("In addition to other remedies, violations of this Code may be prosecuted as municipal infractions."). The County Code specifically incorporates the provisions of Local Government Article ("LG") § 6-102, which govern the process for municipal infractions. Unlike the administrative process that the County has established for assessments of civil penalties (with limited judicial review after an administrative appeal), the municipal infraction process is undertaken pursuant to the original jurisdiction of the District Court. LG § 6-101, *et seq.* The State Laws governing municipal infractions set forth a comprehensive process for the imposition of civil fines not exceeding $1,000, including the issuance of a citation with a summons, an election to stand trial, and the process and proceeding for adjudication by the court. *Id.*

have concurrent jurisdiction); *see also* NR § 5-1612 (authorizing recovery of civil fines for violations of a local forestation program *in a civil action* brought by a local authority) (emphasis added); NR § 8-1815(a) (authorizing "prosecution *or suit in circuit court or District Court*" for fines and penalties related to violations of a local critical area program) (emphasis added).

The provisions of the Talbot County Code that purport to establish a right to administrative appeal of a civil assessment in the Talbot County Board of Appeals are also inconsistent with the jurisdictional limitations of a charter county board of appeals under the Express Powers Act set forth in LG § 10-305(a)(1). Under the Express Powers Act, a charter county may enact local laws to provide for the establishment of a county board of appeals, whose members shall be appointed by the local legislative body. LG § 10-305(a)(1). Where a charter county elects to establish a board of appeals, the Express Powers Act, LG § 10-305(b), also sets the jurisdictional parameters of the board as follows:

> The *county board of appeals may have original jurisdiction or jurisdiction to review the action of an administrative officer* or unit of county government over matters arising under any law, ordinance, or regulation of the county council *that concerns*:
>
> (1) an application for a zoning variation or exception or amendment of a zoning map;
>
> (2) the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; or
>
> (3) the assessment of any special benefit tax.

36

(Emphasis added). After considering a matter within its jurisdiction, the county board of appeals is required to file an opinion "that shall include a statement of facts found and the grounds for the decision." LG § 10-305(c). Any person aggrieved by a decision and a party to the proceeding before the county board of appeals may seek judicial review by the circuit court. LG § 10-305(d). Any party to the circuit court proceeding who is aggrieved by the decision in the circuit court may appeal to the Court of Special Appeals in the same manner provided for in civil cases.[16] *Id.*

Under the plain language of LG § 10-305(b), the jurisdiction conferred upon a local board of appeals by the Legislature does *not* include original jurisdiction or administrative adjudicatory review of civil fines or penalties or other civil assessments. The County argues that it has the authority under the Express Powers Act to confer jurisdiction upon its Board of Appeals to consider civil assessments because the assessments issued by the CCCO constitute "adjudicatory orders." We disagree.

When statutory terms are not defined in a statute, "we may consult a dictionary and give words their ordinary meaning." *Balt. City Det. Ctr. v. Foy*, 461 Md. 627, 645 (2018). "Adjudicate" is defined as "to deem or pronounce to be[.]" *Adjudicate*, Garner's Dictionary of Legal Usage (3d ed. 2011). "Order" is defined as "a command or

---

[16] Of course, one of the fundamental tenets of administrative law is that judicial review of a matter arising under the jurisdiction of an administrative agency is different from a matter arising under the original jurisdiction of the courts. "Judicial review of administrative agency action is narrow." *United Parcel Serv., Inc. v. People's Counsel for Balt. Cty.*, 336 Md. 569, 576 (1994). "A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Id.* at 577 (citations omitted).

direction[.]" *Order*, Garner's Dictionary of Legal Usage (3d ed. 2011). The assessments are not adjudicatory orders—they are not pronouncements by the CCCO that command or direct the Petitioners to take a specific action. Rather, the assessments issued to the Petitioners purported to *enforce* the abatement orders by imposing a daily civil penalty until such time as the Petitioners complied with the *separately issued orders*.[17] To understand the difference between adjudicatory orders and civil assessments, one need look no further than the face of the abatement orders that were issued by the CCCO, which *were* "adjudicatory orders"[18]—they directed the Petitioners to take remedial action to correct the violations, specifying the precise manner for the correction of the violations.

Moreover, if we were to accept the County's argument that the assessments constituted "adjudicatory orders" within the subject matter jurisdiction of the Board of Appeals, such an interpretation would be inconsistent with the other statutory provisions, described *supra*, which confer original jurisdiction over the adjudication of civil penalties and fines in the Maryland courts. We will not adopt an interpretation that is flatly inconsistent with other statutory provisions that explicitly address this subject matter. *See, e.g.*, *Immanuel v. Comptroller of Maryland*, 449 Md. 76, 87 (2016) ("[I]f two acts can reasonably be construed together, so as to give effect to both, such a construction is

---

[17] At the Board of Appeals hearing, the County Attorney made this very point by noting that "the civil penalties that were issued in this case *were intended to enforce the obligations in the abatement order[s]*." (Emphasis added).

[18] In contrast to the assessments, the abatement orders constituted adjudicatory orders that were subject to administrative review by the Board of Appeals.

preferred, and the two should be construed together to be interpreted consistently with their general objectives and scope.").

## III.

## Conclusion

Talbot County does not have the authority to expand the jurisdiction of its Board of Appeals beyond the jurisdictional limits established by the General Assembly. Accordingly, it lacks the authority to vest its Board of Appeals with administrative review of civil penalties. Because this matter originated in the Board of Appeals, we shall vacate the judgment and direct that the case be dismissed. Additionally, we hold that the assessment notices issued by the CCCO that purported to assess civil penalties subject only to administrative review by the Board of Appeals are facially invalid and unenforceable.

We further hold that, to the extent that Chapter 58 of the Talbot County Code establishes a process for the administrative assessment of civil penalties that is inconsistent with the applicable provisions of State law that confer original jurisdiction in the *courts* for the adjudication of civil fines and penalties, such provisions of the Talbot County Code are *ultra vires* and void.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CIRCUIT COURT'S JUDGMENT AND TO REMAND TO THE CIRCUIT COURT; WITH FURTHER INSTRUCTIONS TO THE CIRCUIT COURT TO REMAND TO THE BOARD OF APPEALS; WITH FURTHER INSTRUCTIONS THAT THE BOARD VACATE ITS DECISION, AND**

**DISMISS THE ASSESSMENTS. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**